## THE ROBERT GRAHAM DUNN.

### GRANT v. THE ROBERT GRAHAM DUNN.

(District Court, D. New Hampshire. April 2, 1894.)

No. 222.

1. COLLISION—SAILING VESSELS—HOLDING COURSE—LOOKOUTS.

A vessel sailing free is bound to keep out of the way of one sailing close-hauled, and if she fails to change her course, or, after changing it, fails, through the inexcusable absence of her lookout, to maintain it steadily, and thus causes a collision, she is liable.

2. SAME—ABSENCE OF LIGHT.

The alleged absence of a green light is immaterial, when, from the situation, its presence could not have averted, or its absence contributed to, the collision.

This was a libel by Isaac N. Grant against the schooner Robert Graham Dunn to recover damages for a collision by which the schooner Captain John was sunk.

Benjamin Thompson, for libelant.

Carver & Blodgett, for claimant.

ALDRICH, District Judge. The Captain John, a two-masted schooner, sailed from Roundout, in the district of New York, September 16, 1893, Boston-bound. September 20th, the Robert Graham Dunn, a three-masted schooner, left Portland harbor for Newport News; and about 10 o'clock of the same evening, through the fault of the Dunn, the two vessels were in collision off Chatham bar, the bluff of the starboard bow of the Dunn striking the starboard bow of the Captain John, carrying away her jib boom, disabling her foremast, and cramping her boat, resulting in the total loss of the Captain John and cargo, together with her crew. The Dunn was running light and free at the log rate of about eight knots,—her rate over the ground being accelerated three knots by the action of the tide,—when the red light of the two-masted schooner, which was the Captain John, was sighted about a mile away. At this time her light bore about a half a point on the lee side or port bow of the Dunn. The sails of the two-master were plainly seen, and she was closehauled, with the wind N. by W. or N. N. W. The breeze was quite strong, and she was heading N. E. or N. E. by N. The tide was running westerly, or towards the shoals, and she was about holding her own. Under such circumstances the Captain John had the right of way, and it was plainly the duty of the Dunn to keep clear; and, as there was plenty of sea room, with reasonable care the collision could have been avoided.

The contention of the Dunn is that, recognizing such duty to keep clear, she luffed a point or a point and a half for the purpose of passing under the stern of the two-master. It is probable, if this be true, that if the two vessels had held their courses the Dunn would have passed at least an eighth of a mile to the windward of the Captain John; and it would follow, therefore, that the vessels were in collision by reason of the failure of one vessel or the other to

hold its course. The theory of the Dunn is that while she was holding to her course, adopted for the purpose of crossing under the stern of the other vessel, an eighth of a mile away, the two-master suddenly luffed, and, running into the wind, crossed her bow, and brought on the collision, while the theory of the Captain John is that she kept her course until the Dunn was coming down upon her, and that her course was changed in extremis for the purpose of avoiding a collision.

I find the latter theory to be the true one. The Dunn either failed to change her course so as to run clear, or failed to maintain her watch and course, if she did make a change. It is admitted that the lookout left his post for some minutes, and I find that this was without reasonable excuse, and that no observation was kept of the varying effects of the wind. Whether the collision was brought on by failure to change her course, or failure to exercise care thereafter with a view of maintaining it, it is impossible to say; but it is apparent that the collision resulted from fault in one respect or the other, and it is perhaps immaterial which. It being the duty of the closehauled vessel to keep her course, the theory that she abruptly changed her course, and ran across the bow of the larger vessel, running free, is highly improbable; and it is quite as improbable, in the event of her changing her course, that she could have run into the wind a sufficient distance to cross the bow of the Dunn, if the Dunn had kept the course claimed for her. The story of the Dunn is not a reasonable one, on its face, and moreover it is discredited by the conduct of her officers after the collision. According to the evidence of Edwin Coombs, master of the Willie L. Newton, which passed under the stern of the two-master a few moments before, she was running near the wind, with her sheets flat and both lights burning; that soon after he heard a crash, and saw her in collision with a three-masted schooner which had followed him from Cape Cod light down to Chatham; and that in less than 10 minutes the two-master disappeared. The officers of the Dunn seek to attach blame to the Captain John on the ground of the absence of a green light. I think it more probable than otherwise that her green light was burning; but, however this may be, its absence could not have contributed to the collision, for the reason that when her red light was closed in the vessel was in plain sight, and its presence, therefore, could not have averted, or its absence contributed to, the injury.

The libelant claims that the Dunn should be deemed in fault in bringing on the collision, for the reason that she did not lie by and render the assistance contemplated by chapter 875, Laws 1890, and to relieve themselves from this charge the officers of the Dunn give evidence quite contradictory and unsatisfactory. Notwithstanding they admit they heard the cry of distress and for boats, and that they could see the sails of a vessel a mile or more, and that the two-master, although she was only holding her own, suddenly disappeared from the surface of the water, they say they assumed that she had gone on her course without serious injury, and maintained that the crash was so slight they were excused from doing more than

they did do. They did wear ship,—some of the officers claiming that they came within a half an hour to the place of collision; others, that they were a quarter or a half a mile to the leeward. But it is apparent from the evidence that they could and should have done more to save the crew of the vessel, which they must have known was suddenly sunk. The conduct of the officers was inexcusable, and their account of their doings after the collision is wholly unreliable. The collision took place about 10 in the evening. The officers of the Dunn say they lay to an hour or more at or near the place of collision. This statement is not sustained. The steamship H. F. Dimock, with freight and passengers, passed over the wreck at 10 minutes past 11, and heard the shrieks of the men then clinging to the rigging, which were sufficiently loud to be heard in the state-rooms of the steamer. The engines of the steamer were reversed, the vessel brought about, and boats lowered, which reached the wreck within 20 or 30 minutes, but the men had disappeared. At this time there was no vessel lying to in that vicinity, and none in sight; and I therefore must find that the account of the officers of the Dunn is not reliable in this respect.

On the whole, the Robert Graham Dunn must be adjudged in fault, and responsible for the collision; and at the proper time, in view of the limited liability proceedings now pending, a decree will be entered accordingly.